[Cite as *State v. Humphries*, 2020-Ohio-1116.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 108459 |
| v. | : | |
| DAVID HUMPHRIES, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 26, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-631403-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jonathan Block, Assistant Prosecuting Attorney, *for appellee.*

The Law Offices of Eric L. Foster, L.L.C., and Eric L. Foster, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant David Humphries ("Humphries") appeals his conviction arguing that his conviction was against the manifest weight of the evidence and that the trial court erred in limiting cross-examination. For the

reasons that follow, we affirm Humphries's conviction and find that the trial court did not err.

**Facts**

{¶ 2} On August 10, 2018, Humphries was indicted with: one count of aggravated robbery, a first-degree felony, with one-year and three-year firearm specifications, a notice of prior conviction specification, and a repeat violent offender specification; one count of robbery, a second-degree felony, with one-year and three-year firearm specifications, a notice of prior conviction specification, and a repeat violent offender specification; one count of abduction, a third-degree felony; one count of gross sexual imposition, a fourth-degree felony; and one count of petty theft, a first-degree misdemeanor.

{¶ 3} Humphries pled not guilty to all the charges, and the case proceeded to a bench trial. Humphries's appeal focuses on the testimony of the victim in this case ("R.W."), a woman whom the state described as having some memory and mental health difficulties.

{¶ 4} According to the testimony of R.W., the robbery occurred on May 18, 2018. R.W. had spent the day cleaning her son's apartment before going to the ATM to withdraw cash for her son. He was incarcerated in the Cuyahoga County Jail at the time, and had asked his mother to put money "on his books." R.W. withdrew $600 from the ATM and planned on depositing the money the next day. Upon returning home she noticed an individual — a person she later identified as Humphries — wearing all black in the parking lot behind her apartment. Humphries

approached her as she was parking, pointed a gun at her, and demanded she get in the back seat of her car. Humphries ordered her to take off her skirt, lifted her shirt, and then order groped her chest looking for the money. He finally found the money and fled. R.W. attempted to chase him down in her car but he escaped.

{¶ 5} After returning to her apartment, R.W. took some time to compose herself before asking neighbors for help and notifying police. On March 28, 2018, R.W. was asked by police to look at a photo lineup. She identified Humphries as the individual who had robbed her, identifying him in part by the tattoos on his face.

{¶ 6} At trial, R.W. testified and the state offered video evidence that verified details of R.W.'s account. Multiple times during her direct examination, the court paused questioning to ask R.W. to calm down. R.W. also testified that she had memory problems and took medication for her mental health.

{¶ 7} During cross-examination, R.W. continued to act distressed and the court often had to halt questioning to ask defense counsel to wait to give R.W. time to calm down. The state also presented evidence from four other witnesses, all police officers, but R.W. was the only eyewitness to the crime.

{¶ 8} At the conclusion of the bench trial, the judge found Humphries guilty of aggravated robbery, robbery, abduction and petty theft; Humphries was found not guilty of gross sexual imposition. For purposes of sentencing, the parties agreed that the counts for aggravated robbery, robbery, and petty theft merged. The trial court sentenced Humphries to six years of incarceration with five years of postrelease control.

{¶ 9} Humphries presents two assignments of error for our review.

<u>Assignment of Error I</u>
The trial court erred in finding David Humphries guilty of Counts one, two, three, and four as they are against the manifest weight of the evidence.

<u>Assignment of Error II</u>
The trial court violated David Humphries's Sixth Amendment right to confront witnesses when it refused to order [R.W.] to answer questions on cross-examination.

{¶ 10} We will review them in turn.

## Manifest Weight

{¶ 11} As the sole eyewitness and victim of the alleged crime R.W.'s testimony was essential to proving Humphries's guilt; he argues that she was not credible and that the weight of the evidence is against his conviction. We disagree.

{¶ 12} In our manifest weight review of a bench trial verdict, we recognize that the trial court is serving as the factfinder, and not a jury:

> Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

*State v. Bell*, 8th Dist. Cuyahoga No. 106842, 2019-Ohio-340, ¶ 41 citing *State v. Strickland*, 183 Ohio App.3d 602, 2009-Ohio-3906, 918 N.E.2d 170, ¶ 25 (8th Dist.). *See also State v. Kessler*, 8th Dist. Cuyahoga No. 93340, 2010-Ohio-2094, ¶ 13.

{¶ 13} A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily

against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In contrast to a challenge based on sufficiency of the evidence, a manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. We find that the state met its burden here.

{¶ 14} Admittedly, there were several instances where R.W. was inconsistent in her testimony. R.W. was combative throughout her cross-examination with defense counsel, often contradicting herself on details from her direct examination. For example, on direct, she mentioned that she had been cleaning her son's apartment the day of the incident, but on cross-examination insisted that she had been cleaning her own apartment. She could not seem to remember whether she went to her apartment immediately after the incident or whether she first asked neighbors for help. However, her description of the robbery itself was consistent. We find her to be a credible witness.

{¶ 15} Based on our review of the entire record in this case, weighing the strength and credibility of the evidence presented and the inferences to be reasonably drawn therefrom, we cannot say that the conviction is against the manifest weight of the evidence. There is clear, consistent, and credible evidence that Humphries robbed R.W.

{¶ 16} The first assignment of error is without merit.

## Cross-Examination

{¶ 17} In his second assignment of error, Humphries contends that the trial court did not permit meaningful cross-examination denying him his right to confrontation under the Ohio and United States Constitutions. Humphries's argument is that his attorney was prevented by the trial court from effectively demonstrating R.W.'s flawed memory. We disagree.

{¶ 18} The Sixth Amendment to the U.S. Constitution gives a defendant the right "to be confronted with the witnesses against him." *See also* Ohio Constitution, Article I, Section 108 ("the party accused shall be allowed * * * to meet the witnesses face to face"). But this protection "guarantees only 'an opportunity for effective cross-examination.'" *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 83, quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). Trial courts have "wide latitude to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

{¶ 19} Similarly, Evid.R. 611(B) requires trial courts to permit "[c]ross-examination on all relevant matters and matters affecting credibility." However, under Evid.R. 611(A), a trial court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence."

{¶ 20} When a defendant challenges a trial court's limitation on cross-examination on appeal, the standard of review turns on the nature of the limitation. "Limitations that deny a defendant 'the opportunity to establish that the witnesses may have had a motive to lie' infringe on core Sixth Amendment rights" and are reviewed de novo. *State v. Gonzales*, 151 Ohio App.3d 160, 2002-Ohio-4937, 783 N.E.2d 903, ¶ 45 (1st Dist.), quoting *United States v. Nelson*, 39 F.3d 705, 708 (7th Cir.1994). Here, to establish a confrontation violation, Humphries must show that he was "prohibited from engaging in otherwise appropriate cross-examination." *Van Arsdall* at 680. He cannot.

{¶ 21} Even during direct R.W. was a challenging witness to examine. The record indicates she was distressed throughout the proceeding, allegedly because she was facing the man who robbed her. Her distress was only amplified by cross-examination, which made her exchanges with defense counsel tense affairs. Despite that, it is clear from the record that defense counsel was able to ask relevant questions, highlight R.W.'s memory problems, and effectively try Humphries's case. Humphries argues, however, that his rights were infringed as a result of the trial court supposedly shielding the witness from distressing questions. An examination of the record does not support his argument.

{¶ 22} Humphries offers two instances where the trial court stepped in and ordered defense counsel to move on. In the first instance, defense counsel was pressing R.W. on why her son was in jail; R.W., protesting that she did not want to

discuss her son's business, would not answer. The trial court, seeming to understand the point counsel was making, asked counsel to move on.

{¶ 23} In the second instance, defense counsel asked R.W. why it had taken her a month to try and put money in her son's jailhouse account. R.W. protested that it had not taken her that long and began to explain; defense counsel then cut her off and asked for the court's assistance. After some back and forth about relevance, which included objections from the state, the court explained that:

> It is relevant, because we're talking about that that was the premise that you set up. Now her answer is her answer. Now, you have to ask the question. You understand – I mean, you put on the record that she has mental issues. Her answer is her answer.

{¶ 24} Counsel, seemingly unsatisfied with the answer R.W. had given, continued to ask for the court's assistance; the court asked defense counsel to move on. Humphries contends that the trial court should have ordered R.W. to testify as counsel was attempting to test R.W.'s memory. However, counsel had already succeeded in making clear to the judge that the witness had memory problems.

{¶ 25} Neither exchange cited by Humphries was relevant to the elements of any charges. Further, in the second exchange, it was actually the defense counsel who cut off the witness before she could answer. There is nothing in this record that shows defense counsel was "prohibited from engaging in otherwise appropriate cross-examination." *Van Arsdall*, 475 U.S. 679-680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

**{¶ 26}** It must be noted that this was a bench trial with an experienced and capable trial court; the court was clear that the witness was credible and extremely consistent in describing the robbery. There was sufficient evidence presented and the court did not need additional information on the background of the witness in order to make the correct decision. This assignment of error lacks merit.

**{¶ 27}** For the foregoing reasons, we affirm Humphries's conviction and the decision of the trial court as to the extent of his cross-examination.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

EILEEN T. GALLAGHER, A.J., and
SEAN C. GALLAGHER, J., CONCUR